IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MEGHAN STONE

    *Plaintiff*,

    v.

WELLS FARGO BANK, N.A.

    *Defendant*.

Civil Action No. ELH-18-2526

**MEMORANDUM OPINION**

Plaintiff Meghan Stone filed suit in the Circuit Court for Baltimore City against defendant Wells Fargo Bank, N.A. ("Wells Fargo," or the "Bank"). ECF 1-3 (the "Complaint"). She alleges, *inter alia*, that defendant improperly took funds from her account, in violation of the terms of the service agreement (ECF 5-2, the "Agreement") for her account. ECF 1-3. Wells Fargo removed the case to this Court, based on diversity jurisdiction under 28 U.S.C. § 1332. ECF 1 ("Notice of Removal").[1]

The Complaint contains ten claims: "Unjust Enrichment" (Count I); "Conversion" (Count II); "Breach of Fiduciary Duty" (Count III); "Accounting" (Count IV); "Aiding and Abetting" (Count V); "Civil Conspiracy" (Count VI.A); "Breach of Contract" (Count VI.B); "Negligence" (Count VII); "Respondeat Superior" (Count VIII); and "Malicious Prosecution" (Count IX).[2] *Id.*

---

[1] Suit was filed on December 22, 2017. However, service of process was not made until July 19, 2018. ECF 1 at ¶ 2; *see also* ECF 1-4 at 2. The case was removed on August 17, 2018. ECF 1.

[2] Plaintiff listed the "Civil Conspiracy" claim and the "Breach of Contract" claim separately but labeled them both Count VI. ECF 1-3 at 8. Accordingly, I have renumbered them as Count VI.A and Count VI.B, respectively.

at 3-13. Stone seeks compensatory and punitive damages, in addition to attorney's fees and costs. *Id*. at 13.

Wells Fargo has filed a "Motion to Compel Arbitration and Dismiss Action," pursuant to Fed. R. Civ. P. 12(b)(1). ECF 5. It is supported by a memorandum of law (ECF 5-1) (collectively, the "Motion") and an exhibit. ECF 5-2. According to Wells Fargo, the Agreement's arbitration provision requires arbitration of plaintiff's claims, and therefore the Complaint should be dismissed. ECF 5-1 at 3.

Stone filed an opposition to the Motion (ECF 8) (the "Opposition"), along with exhibits. *See* ECF 8-2 (list of Stone's accounts with Wells Fargo); ECF 8-3 at 2 ("Arrest Warrant" for Stone); ECF 8-3 at 3-5 ("Statement of Charges" against Stone); ECF 8-4 ("Application for Statement of Charges" against Stone). Notably, Stone concedes that Counts I through VI.B are subject to arbitration. ECF 8, ¶¶ 1-2. However, she maintains that Counts VII through IX are not governed by the Agreement. *Id.* ¶ 3. Wells Fargo has replied. ECF 9 (the "Reply").

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons set forth above, I shall grant Wells Fargo's Motion.

## I. Factual Background

In 2014, Stone was a Wells Fargo customer with two checking accounts (accounts 1984747996 and 5549168515), a savings account (account 5549491651), and a secure line of credit (account 6031400929) with the Bank. ECF 1-3, ¶ 9. The Agreement governed her use of these Wells Fargo accounts. Among other things, the Agreement included an expansive arbitration provision, stating that any "dispute" that cannot be resolved informally "will be resolved through the arbitration process as set forth in this part." ECF 5-2 at 8.

The Agreement defines a "'dispute'" as "any unresolved disagreement" between the parties. *Id.* "It includes any disagreement relating in any way to services, accounts or matters; to [Stone's] use of any of the Bank's banking locations or facilities; or to any means [she] may use to access [her] accounts." *Id.* Of import here, "dispute" also includes "claims based on broken promises, contracts, torts, or other wrongful actions" as well as "statutory, common law and equitable claims." *Id.* The arbitration provision also applies to "disputes" about the "meaning, application or enforceability of this arbitration agreement." *Id.* "As the sole exception to the Agreement's arbitration provision, [Stone] and the Bank retain the right to pursue in small claims court any dispute that is within that court's jurisdiction." *Id.*

The Agreement also incorporates the American Arbitration Association ("AAA") Rules, *id.*:

> Each arbitration, including the selection of the arbitrator(s) shall be administered by the American Arbitration Association (AAA), or such other administrator as you and the Bank may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules").

By extension, the Agreement incorporates AAA Rule R-7(a). *See* ECF 9-1 (AAA Rules) at 14. It provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.*

Stone alleges that "[s]ometime after December 17, 2014," Wells Fargo removed approximately $45,000 from her accounts without her knowledge or consent. *Id.* ¶ 11. It also denied her use of her secure line of credit. *Id.* She alleges that upon learning of the withdrawal, she notified Wells Fargo of the "improper taking of approximately $45,000.00" from her accounts

and demanded that Wells Fargo return the funds.  *Id.* ¶¶ 11-12.  But, it has allegedly refused to do so.  *Id.* ¶ 13.

Stone contends that Wells Fargo employees were "improperly taking/converting money" from her accounts and "otherwise improperly using" her accounts and personal information "for improper purposes."  ECF 1-3, ¶ 32.  She also alleges that a Bank employee "improperly accept[ed] and receive[d] debit cards approved for the Plaintiff and improperly approve[d] large cash withdrawals."  *Id.* ¶ 45.

According to Stone, Wells Fargo knew that she "had not committed any crime," but nonetheless caused Anne Arundel County Police Department to investigate her.  ECF 1-3, ¶¶ 14, 61.  The investigation, she maintains, resulted in the police wrongfully charging her with fifteen felony counts and two misdemeanor counts relating to theft, fraud, and identity theft. *Id.* ¶ 15; *see also* ECF 8-3; ECF 8-4.  Further, she "was booked, fingerprinted, photographed and detained [by the police] for approximately twenty-four (24) hours all while pregnant."  ECF 1-3, ¶ 59.  According to Stone, the case against her was terminated on February 15, 2015.  *Id.* ¶ 60.

Wells Fargo tells a different story.  It claims that Stone entered a "Wells Fargo branch in Severna Park, Maryland, in April of 2014 and met with a bank employee."  ECF 9 at 2.  During this meeting, plaintiff falsely presented herself as a Wells Fargo customer from California, who was also named Meghan Stone.  Plaintiff allegedly told the Wells Fargo employee that she had just moved from California to Maryland and needed help changing the basic information on her California accounts.  *Id.*  In so doing, the "Wells Fargo bank accounts belonging to a different person [also] named Meghan Stone in California were modified so that the other customer's contact phone numbers and date of birth were changed to that of the Plaintiff in Maryland."  *Id.* Plaintiff also allegedly ordered new debit cards tied to the California accounts, allowing her to

access the funds of the other Meghan Stone. *Id.* Further, the Bank alleges that plaintiff used these cards to make purchases and cash withdrawals against the other Meghan Stone's accounts. *Id.* After the Meghan Stone in California discovered that over $10,000 had been withdrawn from her accounts, she notified Wells Fargo, which restored her funds and conducted a fraud investigation. *Id.*

Plaintiff contests defendant's recitation of these events, claiming that a Wells Fargo employee negligently initiated the changes and she engaged in no wrongdoing. ECF 1-3, ¶¶ 31-32, 44-45. Nevertheless, as Wells Fargo correctly notes, "[i]t is not necessary for the Court to resolve any part of this dispute in order to rule on the pending Motion to Compel Arbitration." ECF 9 at 2 n.1.

Additional facts are included in the Discussion.

## II.     Legal Standards

### A.     The Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, Wells Fargo moves to compel arbitration and to dismiss this action. The FAA, which was enacted in 1925, "provides for the enforceability of arbitration agreements and specifies procedures for conducting arbitrations and enforcing arbitration awards . . . ." *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 679 (4th Cir. 2018). Under § 2 of the FAA, an arbitration contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Thus, "the FAA elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration." *McCormick*, 909 F.3d at 680 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

In *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)), the Fourth Circuit explained:

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

In *Adkins*, the Court also said, 303 F.3d at 500: "A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Accordingly, a court must "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002).

Nevertheless, there must be an "independent jurisdictional basis" for suit in federal court. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). Of significance here, "diversity jurisdiction would authorize a federal court to resolve disputes concerning the arbitration process. . . ." *McCormick*, 909 F.3d at 681.

Section 3 of the FAA is also relevant. It provides, 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The Fourth Circuit has explained: "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing

for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)).

Notwithstanding the terms of 9 U.S.C. § 3, some courts have ruled that, in lieu of a stay, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see Willcock v. My Goodness! Games, Inc.*, PWG-16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Kabba v. Ctr.*, PWG-17-211, 2017 WL 1508829, at *2 (D. Md. Apr. 27, 2017) (same), *aff'd*, 730 F. App'x 141 (4th Cir. 2018).

"Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (alteration in *Levin*). Notably, "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'"); *Adkins*, 303 F.3d at 50.

The FAA reserves for trial the question of whether an arbitration agreement has been made, provided that a question of fact as to that issue is properly generated. *See* 9 U.S.C. § 4. "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id.* In order to generate an issue for resolution by a factfinder, the party opposing arbitration must make "'an unequivocal denial that the agreement [to arbitrate] had been made,'" and must produce "'some evidence . . . to substantiate the denial.'" *Drews Distributing, Inc. v.*

*Silicon Gaming, Inc.*, 245 F.3d 347, 352 n.3 (4th Cir. 2001) (citations and some internal quotation marks omitted).

## B.    Rule 12(b)(3)

The Supreme Court has observed that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

In *Sucampo Pharmaceuticals, Inc. v. Astellas Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006), the Fourth Circuit determined that "a motion to dismiss based on a forum-selection clause," such as an arbitration provision, "should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." The *Sucampo* Court explained, *id* at 548 (internal and external citations omitted) (my alteration):

> [T]reating a motion to dismiss on the basis of a forum-selection clause under Rule 12(b)(1) presents practical difficulties that undercut the benefits gained from enforcement of the clauses. For example, the court must raise the issue of subject-matter jurisdiction *sua sponte*, if necessary. *See* Fed. R. Civ. P. 12(h)(3). Thus, in cases involving forum-selection clauses, both district and circuit courts would be under an obligation to confirm that the clause was not applicable before reaching the merits of the action. . . . More importantly a motion to dismiss under Rule 12(b)(1) is non-waivable and may be brought at any time—even on appeal—regardless of whether a litigant raised the issue in an initial pleading. Litigants, therefore, could hold back forum-selection clause objections, until after discovery—or even an adverse verdict.

Moreover, the Fourth Circuit recognized that "Supreme Court precedent suggests that [Rule] 12(b)(6) is not the appropriate motion for enforcing a forum-selection clause." *Sucampo*, 471 F.3d at 549. It observed that "because a 12(b)(6) motion may be brought at any time prior to adjudication on the merits, analyzing forum-selection clauses under Rule 12(b)(6) would present some of the same timing concerns as in the 12(b)(1) context." *Id.* (citations omitted). The Court reasoned: "Analyzing forum-selection agreements under Rule 12(b)(3) would avoid the doctrinal

and timing disadvantages of utilizing Rule 12(b)(1) or (6) and be consistent with Supreme Court precedent." *Id* (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998) (finding that motions to dismiss based on forum-selection clause should be analyzed under Rule 12(b)(3) based on the Supreme Court's decision in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988))).

Since *Sucampo*, the Fourth Circuit has reiterated that a challenge based on a forum-selection clause, including an arbitration clause, should be addressed by way of a motion to dismiss for improper venue under Rule 12(b)(3). *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012). Nevertheless, other judges of this court have considered motions to dismiss in favor of arbitration under Rule 12(b)(1) and Rule 12(b)(6). *See, e.g., Willcock*, 2018 WL 3970474, *3 (D. Md. Aug. 20, 2018) (collecting cases); *Garrett v. Monterey Fin. Servs., LLC*, JKB-18-325, 2018 WL 3579856, at *2 (D. Md. July 25, 2018) ("[M]otions to dismiss in connection with a valid arbitration agreement are often brought under Rule 12(b)(6) based on the observation that the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction. . . . However, courts have also found it proper to dismiss claims subject to arbitration agreements under Rule 12(b)(1)." (citations omitted)); *Lomax v. Weinstock, Friedman & Friedman, P.A.*, CCB-13-1442, 2014 WL 176779, at *2 (D. Md. Jan. 15, 2014) ("Courts have found it proper to dismiss claims subject to arbitration agreements under both Rule 12(b)(1) and Rule 12(b)(6)."), *aff'd*, 583 F. App'x 100 (4th Cir. 2014).

In light of the Fourth Circuit's guidance in *Sucampo*, I shall construe defendant's motion to dismiss as one brought under Rule 12(b)(3). *See, e.g., Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, DKC-13-0560, 958 F. Supp. 2d 609, 612 (D. Md. 2013) (considering a motion to dismiss based on a forum selection clause pursuant to Rule 12(b)(3)); *Enter. Info. Mgmt., Inc. v.*

*SuperLetter.com, Inc.*, DKC-13-2131, 2013 WL 5964563, at *3 (D. Md. Nov. 7, 2013) (considering a motion to dismiss in favor of arbitration pursuant to Rule 12(b)(3)).

A defendant may challenge the sufficiency of plaintiff's choice of venue by way of a motion under Rule 12(b)(3). In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate. *Bartholomew v. Virginia Chiropractors Ass'n,* 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), overruled on other grounds by *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *accord Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2017 WL 52554, at *2 (D. Md. Jan. 3, 2017); *Jones v. Koons Auto. Inc.,* 752 F. Supp. 2d 670, 679 (D. Md. 2010). If the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper." *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). "In assessing whether there has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff." *Aggarao*, 675 F.3d at 366. And, the court may "freely consider evidence outside the pleadings . . . ." *Sucampo*, 471 F.3d at 550; *see also Aggarao*, 675 F.3d at 365-56 ("On a motion to dismiss under Rule 12(b)(3), a court is permitted to consider evidence outside the pleadings."); *Taylor v. Shreeji Swami, Inc.*, PWG-16-3787, 2017 WL 1832206, at *1 (D. Md. May 8, 2017) (same); *Convergence Mgmt. Assocs., Inc. v. Callender*, TDC-15-4015, 2016 WL 6662253, at *2 (D. Md. Nov. 10, 2016) (same).

Because "'it is possible for venue to be proper in more than one judicial district,' the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'" *Carefirst*, 235 F. Supp. 3d at 732 (quoting *Mitrano*, 377 F.3d at 405). And, in considering "whether events or omissions are sufficiently substantial to support venue . . . , a court should not focus only on those matters that are in dispute or that directly

led to the filing of the action." *Mirtano*, 377 F.3d at 406 (citation omitted). Instead, "it should review 'the entire sequence of events underlying the claim.'" *Id.*; *accord Taylor*, 2017 WL 1832206, at *1; *Callender*, 2016 WL 6662253, at *2.

As indicated, a motion to dismiss for improper venue, filed under Rule 12(b)(3), "allows the court to freely consider evidence outside the pleadings . . . ." *Sucampo*, 471 F.3d at 550. Here, the Court considers the exhibits submitted by the parties: the Agreement (ECF 5-2) and a list of Stone's accounts with Wells Fargo (ECF 8-2).

### III.    Discussion

As noted, in deciding a motion to compel arbitration or to dismiss, courts must first "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray*, 289 F.3d at 302; *see also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). Here, neither party contests the validity of the agreement. *See* ECF 1-3; ECF 5-1; ECF 8. Further, other judges in this district have recognized the validity of similar consumer banking arbitration agreements. *See, e.g.*, *Bey v. Midland Credit Mgmt., Inc.*, GJH-15-1329, 2016 WL 1226648 (D. Md. Mar. 23, 2016); *Koenick v. Citibank (S. Dakota), N.A.*, AAW-05-1006, 2005 WL 1363982, at *1 (D. Md. June 7, 2005).

As noted, Stone concedes that Counts I through VI.B "deal with allegations and claims governed" by the Agreement's arbitration provision. ECF 8, ¶ 2. However, she maintains that Counts VII through IX "do not relate or have anything to do with Plaintiff's accounts with Defendant." *Id.* ¶ 3. Rather, they relate to her allegations that a Wells Fargo employee "acted improperly" and "negligently, recklessly, and/or intentionally caused [her] to be wrongly charged with a crime she did not commit." *Id.* ¶ 5. Thus, her allegations pertain to accounts for which

"Plaintiff never entered into any Account Agreement." *Id.* ¶ 8. Further, Stone claims that the "Complaint and the legal documents generated in connection with the criminal charges against the Plaintiff makes [sic] clear the criminal activity the Plaintiff was accused of engaging in by the Defendant and its Agents[] had nothing to do with and was wholly unrelated to the Account Agreement[.]" *Id.* ¶ 6. (citing ECF 8-3 at 2 (Arrest Warrant); ECF 8-3 at 3-5 (Statement of Charges); ECF 8-4 (Application for Statement of Charges)).

Under plaintiff's theory, because these three counts "do not relate or have anything to do with Plaintiff's accounts with Defendant," they are not controlled by the Agreement. *Id.* ¶ 3. Wells Fargo argues that plaintiff's argument must be decided not by the Court, but by the arbitrator. But, if the Court rejects this argument, Wells Fargo maintains that the Court should hold plaintiff's three counts arbitrable.

### A. Principles of Contract Construction

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Richard A. Lord, 1 *Williston on Contracts* § 1:1, at 2-3 (4th ed. 1990); *accord* Restatement (Second) Contracts § 1, at 5 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006). "'A contract is formed when an unrevoked offer made by one person is accepted by another.'" *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008) (quoting *Prince George's County v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)). Thus, mutual assent is an integral component of every contract. *See, e.g.*, *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).

In determining whether there is an enforceable contract, courts begin the analysis "by discussing the essential prerequisite of mutual assent to the formation of a contract . . . ." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 302, 107 A.3d 1183, 1189 (2015). *See also Joseph Saveri Law Firm Inc. v. Michael E. Criden, P.A.*, ___ F. App'x ___, 2019 WL 181453, at *2 (4th Cir. Jan. 14, 2019) (recognizing as a "bedrock principle of law" that an offeree must accept an offer to form a contract); *Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'" (citations omitted)). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran*, 398 Md. at 14, 919 A.2d at 708.

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cnty. Comm'rs of Caroline Cnty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders, Inc.*, 178 Md. App. at 377-78, 941 A.2d at 1209-10; *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956)

(stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable").

Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017); *see also Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7, 98 A.3d 264, 268 (2014); *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006); *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004); *Lema v. Bank of Am., N.A.*, 375 Md. 625, 641, 826 A.2d 504, 513 (2003); *Under Armour, Inc. v. Ziger/Snead, LLP*, 232 Md. App. 548, 552, 158 A.3d 1134, 1136 (2017). This includes the determination of whether a contract is ambiguous. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540, 544 (2003).

"'The cardinal rule of contract interpretation is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224, 232 (2013) (citation omitted). To determine the parties' intention, courts look first to the written language of the contract. *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006) ("[G]enerally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."); *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("[T]he court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated."), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997).

"Maryland courts interpreting written contracts have long abided by the law of objective contract interpretation, which specifies that 'clear and unambiguous language' in an agreement 'will not give way to what the parties thought the agreement meant or was intended to

mean.'" *Urban Growth Prop. Ltd. P'ship v. One W. Balt. St. Assocs. LLC*, No. 882, Sept. Term, 2015, 2017 WL 526559, at *5 (Md. Ct. Spec. App. Feb. 9, 2017) (citation omitted) (unpublished); *see Cochran*, 398 Md. at 16, 919 A.2d at 709; *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014) (internal quotations and alteration omitted). The court's "task, therefore, when interpreting a contract, is not to discern the actual mindset of the parties at the time of the agreement." *Dumbarton*, 434 Md. at 52, 73 A.3d at 232. Rather, the court is to "'determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *Gen. Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)).

As indicated, to determine the parties' intention, courts first look to the written language of the contract. *See Walton*, 391 Md. at 660, 894 A.2d at 594. "'The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.'" *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 313, 829 A.2d 626, 632-33 (2003) (citations omitted). A court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean. *See Dumbarton*, 434 Md. at 51, 73 A.3d at 232; *Dennis v. Fire & Police Employees Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001); *see also, e.g.*, *Scarlett Harbor,* 109 Md. App. at 291, 674 A.2d at 142 ("Where the language of a contract is clear, there is no room for construction; it must be presumed that the parties meant what they expressed.").

Moreover, a court will not "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *Brensdel v. Winchester Constr. Co.*, 392 Md. 601, 623, 898 A.2d 472, 485 (2006). Indeed, "[i]t is a fundamental principle of contract law that it is

'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (*quoting Canaras*, 272 Md. at 350, 322 A.2d at 873); *see Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 1443 (Table), 1992 WL 145269, at *5 (4th Cir. 1992) (per curiam) ("[A] court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck.").

## B. The Determination of Arbitrability

To resolve this arbitrability dispute, the Court must first "determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if [the Court] conclude[s] that the court is the proper forum in which to adjudicate arbitrability, [the Court] then decide[s] *whether* the dispute is, in fact, arbitrable." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012) (emphases in original).

Although the Fourth Circuit has "adopted a 'general policy-based, federal presumption in favor of arbitration,' that presumption is not applied 'to resolve questions of the arbitrability of arbitrability issues themselves.'" *Id.* at 102 (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999)) (internal quotations omitted). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)) (internal brackets omitted); *accord Novic v. Credit One Bank, Nat'l Ass'n*, ___ Fed. App'x ___, 2019 WL 103878, at *2 (4th Cir. Jan. 4, 2019); *Kabba v. Rent-A-Ctr., Inc.*, 730 F. App'x 141, 142 (4th Cir. 2018); *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 874 (4th Cir.), *cert. denied*, 137 S. Ct. 567 (2016); *Carson*, 175 F.3d 329.

"The 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Peabody*, 665 F.3d at 102. The test "requires more than simply saying that the arbitrator determines the meaning of any disputed contractual terms." *Carson*, 175 F.3d at 329; *see, e.g.*, *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 527 (4th Cir. 2017) (quoting *Carson*, 175 F.3d at 330), *abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ____, 2019 WL 122164 (2019) (emphasis in original) (concluding that "'broad arbitration clauses that generally commit all interpretive disputes 'relating to' or 'arising out of' the agreement *do not* satisfy the clear and unmistakable test'"); *E.I. DuPont de Nemours & Co. v. Martinsville Nylon Emps.' Council Corp.*, 78 F.3d 578, at *1 (4th Cir. 1996) (unpublished) (holding the clear and unmistakable test was not met where the contract provided for arbitration of "[a]ny question as to the interpretation of this Agreement or as to any alleged violation of any provision of this Agreement"); *see also Peabody*, 665 F.3d at 102. However, "[t]hose who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect." *Carson*, 175 F.3d at 330-31.

The Fourth Circuit recently concluded that "when . . . two sophisticated parties expressly incorporate into a contract JAMS Rules that delegate questions of arbitrability to an arbitrator, then that incorporation constitutes the parties' clear and unmistakable intent to let an arbitrator determine the scope of arbitrability." *Simply Wireless*, 877 F.3d at 529. In reaching its conclusion, the Court observed that the two other circuits that had considered this question had "concluded that the incorporation of JAMS Rules constitutes 'clear and unmistakable evidence' of the parties' intent to delegate questions of arbitrability to the arbitrator." *Id.* at 527 (citing *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832

F.3d 534, 546 (5th Cir. 2016)). Moreover, "other circuits have concluded that the incorporation of arbitral rules substantively identical to those found in JAMS Rule 11(b)" constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability." *Simply Wireless*, 877 F.3d at 527. Several of these circuit court decisions reached this conclusion about the incorporation of the AAA Rules. *Id.*; *see Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (same); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) (same); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same).

Of relevance here, the Fourth Circuit twice stated in *Simply Wireless* that its holding applied to agreements between *sophisticated actors*. *See* 877 F.3d at 528, 529. It did not specify whether the incorporation of arbitration rules provides clear and unmistakable evidence of the parties' intent when a party is not sophisticated. Accordingly, in this Circuit, it remains an open question whether the incorporation of arbitration rules provides "clear and unmistakable" evidence of an unsophisticated party's intent to arbitrate arbitrability.

Notably, "[n]early every circuit to have addressed the issue . . . addressed the question in the context of arbitration agreements entered into by organizations, not unsophisticated individuals.'" *Richardson v. Coverall N. Am., Inc.*, No. CV-18-532-MAS-TJB, 2018 WL 4639225, at *3 (D.N.J. Sept. 27, 2018) (citing *Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 427-29 (E.D. Pa. 2016)); *see Qualcomm*, 466 F.3d at 1373; *Terminix*, 432 F.3d at 1332-33; *Contec*, 398 F.3d at 208; *Brennan*, 796 F.3d at 1130; *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013). The Eighth Circuit is the only one to consider a case involving an unsophisticated party. *See Fallo*, 559 F.3d at 878. However, it simply assumed, without comment, that the

holdings in commercial disputes applied when an unsophisticated party was involved. *Id.* at 878.

Like *Simply Wireless*, the Ninth Circuit addressed the question in a case involving sophisticated parties. *See Brennan*, 796 F.3d at 1130. Also like the Fourth Circuit, it did not foreclose the application of its holding to unsophisticated parties, but it did not require it, either. *See Brennan*, 796 F.3d at 1130-31 ("[O]ur holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. . . .[But,] we limit our holding to the facts of the present case, which do involve an arbitration agreement between sophisticated parties.") (internal quotations omitted); *accord Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1062 (9th Cir. 2018) ("As in *Brennan* itself, we need not decide whether the *Brennan* rule applies when one or more party is unsophisticated.").

Indeed, district courts in the Ninth Circuit have split over whether to apply the reasoning in *Brennan* to agreements that involve unsophisticated parties. *Taylor v. Shutterfly, Inc.,* No. 18-CV-00266-BLF, 2018 WL 4334770, at *6 (N.D. Cal. Sept. 11, 2018). *Compare Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) ("Every district court decision in our circuit to address the question since *Brennan* has held that incorporation of AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party.") *with Miller v. Time Warner Cable Inc.*, No. 816CV00329, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("[T]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties.").

The question also remains open in the Third Circuit, where at least two district courts have concluded that a "cross-reference to a set of arbitration rules containing a provision that vests an arbitrator with the authority to determine his or her own jurisdiction does not automatically

constitute clear and unmistakable evidence that the parties intended" to arbitrate arbitrability. *Allstate*, 171 F. Supp. 3d at 428; *see also Richardson v. Coverall N. Am., Inc.*, No. CV-18-532-MAS-TJB, 2018 WL 4639225, at *3 (D.N.J. Sept. 27, 2018). The *Allstate* Court reasoned that "incorporating forty pages of arbitration rules into an arbitration clause is tantamount to inserting boilerplate inside of boilerplate, and to conclude that a single provision contained in those rules amounts to clear and unmistakable evidence of an unsophisticated party's intent would be to take "'a good joke too far.'" *Allstate*, 171 F. Supp. 3d at 429 (quoting *Campbell Soup Co. v. Wentz*, 172 F.2d 80, 83 (3d Cir. 1948)).

The First Circuit also expressed doubts that a cross-reference to the AAA Rules constituted clear and unmistaken evidence of intent when an unsophisticated party is involved. *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 12 (1st Cir. 2009). It did not believe "that many people read the small print in form contracts, let alone the small print in arbitration rules that are cross-referenced by such contracts, however explicit the cross-reference." *Id.* The First Circuit nevertheless felt limited by precedent, stating that "[i]f the matter were completely open in this circuit, we are not certain of the outcome." *Awuah*, 554 F.3d at 10-11.

However, to my knowledge, the matter is unresolved in the Fourth Circuit. And, I am not persuaded that a single cross-reference to the AAA Rules provides "clear and unmistakable" evidence of plaintiff's intent to arbitrate arbitrability. In a dispute centered on a restaurant's employment contract, one court in this Circuit aptly expressed the concern:

> Incorporation by reference of an obscure body of rules to show a clear and unmistakable intent to adhere to one rule specifically is preposterous. It is so unlikely as to be bordering on the absurd that an unsophisticated party, such as an employee of a fast food restaurant, would know what the AAA is, much less the contents of its governing rules. The intent of the agreement is undoubtedly clear and unmistakable to the authors, most likely employers, but the intent is obfuscated, possibly intentionally, for the employee unless the employee happens to know the AAA rules, a ridiculous assumption, or takes the time to read the rules and

specifically notices, among all the other rules, the rule permitting the arbitrator to determine gateway issues. How this could be considered clear and unmistakable can only be explained if the true meanings of "clear" and "unmistakable" are ignored.

*Ashworth v. Five Guys Operations, LLC*, No. CV 3:16-06646, 2016 WL 7422679, at *3 (S.D.W. Va. Dec. 22, 2016).

Despite its sound reasoning, the court nevertheless concluded that the delegation provision was clear and unmistakable evidence of the parties' intent "in light of the unanimity of opinion among federal courts." *Id.* But, *Ashworth* primarily relied on the holdings of the courts that addressed the issue in the context of sophisticated parties, not unsophisticated individuals. *See Richardson,* 2018 WL 4639225, at *3.

Here, the Agreement is between a Fortune 500 company and a consumer. It strains credulity to believe that the consumer knew—much less intended—that the cross-reference directed an arbitrator to decide arbitrability. To treat the Agreement as evidencing clear and unmistakable evidence of plaintiff's intent "would be to take 'a good joke too far.'" *Allstate*, 171 F. Supp. 3d at 429 (quoting *Campbell*, 172 F.2d at 83). Wells Fargo can do better. Accordingly, the Court, not the arbitrator, must determine whether plaintiff's three remaining counts are arbitrable.

### C.    The Arbitrability of Plaintiff's Claims

"'Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 91 (4th Cir. 1996)) (alteration and internal quotations omitted). Nevertheless, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses*, 460 U.S. at 24. Indeed, under the FAA,

"any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Id.* at 25. Therefore, the Court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Courts have distinguished between "narrow" and "broad" arbitration clauses. Here, the Agreement's arbitration provision applies to any "disagreement *relating in any way* to services, accounts or matters; to [Stone's] use of any of the Bank's banking locations or facilities; or to any means [she] may use to access [her] accounts." ECF 5-2 at 8 (emphasis added). The Supreme Court and Fourth Circuit have given a "broad" reading to similar language. *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (labelling as "broad" a clause that required arbitration of "[a]ny controversy or claim arising out of or *relating to* this Agreement") (emphasis added); *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (after declaring that the scope of a clause providing for the arbitration of "[a]ll disputes *arising in connection with*" a contract was identical to that of a clause providing for the arbitrability of disputes that "may arise out of or in relation to" an agreement, construing the arbitration clause "to encompass a broad scope of arbitrable issues") (alteration in original) (emphasis added). Therefore, the Agreement's arbitration provision encompasses "a broad scope of arbitrable issues." *J.J. Ryan*, 863 F.2d at 321.

Unlike narrow arbitration clauses that require "only the arbitration of claims arising under the contract," broad arbitration clauses "'embrace every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'" *Am. Recovery*, 96 F.3d at 93 (alteration omitted) (quoting *J.J. Ryan*, 863 F.2d at 321). Broad provisions

do "'not limit arbitration to the literal interpretation or performance of the contract[.]'" *Id.* (quoting *J.J. Ryan*, 863 F.2d at 321) (emphasis omitted). Therefore, "the governing standard for determining the arbitrability of [plaintiff's] claim is whether [plaintiff's] claims have a significant relationship to the . . . Agreement[]." *Long*, 248 F.3d at 317.

Here, the Court must consider the arbitrability of Counts VII ("Negligence"), VIII ("Respondeat Superior"), and IX ("Malicious Prosecution"). The Agreement's arbitration provision covers any "disagreement relating in any way to *services*, *accounts* or matters; to [Stone's] use of any of the Bank's *banking locations* or facilities; or to *any means [she] may use to access [her] accounts*." ECF 5-2 at 8 (emphases added). Plaintiff contends that Counts VII, VIII, and IX do not relate to the Agreement. Rather, they relate to her claim that Wells Fargo caused her "to be wrongfully charged with a crime she did not commit." ECF 8, ¶ 5. These criminal charges, she contends, are "wholly unrelated to" the Agreement. *Id.* ¶ 6. Further, Stone argues that these counts are not arbitrable "because they do not relate or have anything to do with" her accounts with Wells Fargo. ECF 8, ¶ 4. The Agreement's arbitration provision pertains to the accounts she opened, but she did not open the accounts at issue in Counts VII-IX. *Id.*

In Count VII, Stone contends that Wells Fargo negligently hired and supervised its employee. ECF 1, ¶¶ 42-47. Stone alleges that Wells Fargo, *id.* ¶ 45:

> "knew or should have known its Agents would, or had a propensity to, improperly change the Plaintiff's banking information and Accounts, improperly accept and receive debit cards approved for the Plaintiff and improperly approve large cash withdrawals, improperly investigation allegations of wrongdoing against the Plaintiff related to Plaintiff[']s relationship with the Defendant and Plaintiff's Accounts and improperly accuse the Plaintiff of illegal and/or fraudulent activity and otherwise fail to follow standard practices[.]"

Count VII lies within the ambit of the Agreement's arbitration provision. The alleged negligence of the Wells Fargo employee amounts to a dispute concerning Wells Fargo's services

and is therefore arbitrable. Similarly, the dispute as to the employee changing the banking information and accounts is closely related to Stone's means of accessing her Bank accounts and services of the Bank.

In Count VIII, Stone alleges "respondeat superior," claiming that defendant is liable for the acts and omissions of its employees as described in Count VII. ECF 1, ¶¶ 48-53. Therefore, Count VIII turns on the same allegations underlying Count VII and is arbitrable for the same reasons.

Plaintiff alleges in Count IX that Wells Fargo is liable for "malicious prosecution." ECF 1, ¶¶ 54-62. Stone maintains that "an investigation and claims by Defendant's agent, Margaret 'Peggy' Stanton and statements by Defendant's Agent Joshua Kahn, caused Anne Arundel County Police-Criminal Investigation Division to file an application for statement of charges on December 17, 2014," against plaintiff. *Id.* ¶ 55. As a consequence, an arrest warrant was issued for Stone, who turned herself into custody and was released pending prosecution. *Id.* ¶¶ 56-57. The Complaint alleges that "Defendant and/or its Agents acted with malice and without any probable cause in causing the warrant to be issued and the Plaintiff to be prosecuted" even though they "knew the Plaintiff had not committed any crime." *Id.* ¶¶ 60-61.

Count IX is also subject to arbitration. There is a significant relationship between the events that allegedly underlie Stone's malicious prosecution claim and her use of Wells Fargo banking services and accounts. *See* ECF 8-4. For example, the Anne Arundel Police Department's Statement of Charges relies heavily on plaintiff's use of Wells Fargo's banking locations and the services she received there. Indeed, the Department's interview of Kahn pertained almost exclusively to events occurring at a Wells Fargo location and services provided by a Wells Fargo employee. *Id.* at 9-11. As a consequence, Count IX is arbitrable.

## D.    The Remedy

There is "tension" within the Fourth Circuit regarding whether dismissal or a stay is appropriate when granting a motion to compel arbitration. *Aggaro*, 675 F.3d at 376. Ordinarily, the "'proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration,'" under Section 3 of the FAA, "'rather than to dismiss outright.'" *Aggarao*, 675 F.3d at 376 n.18 (citation omitted). However, Fourth Circuit case law indicates that dismissal, rather than a stay, may be "a proper remedy when *all* of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (emphasis added); *see also Aggarao*, 675 F.3d at 376 n.18 (discussing *Choice Hotels* and status of circuit split as to "whether a district court has discretion to dismiss rather than stay an action subject to arbitration").

As Judge Chasnow noted in *Taylor v. Santander Consumer USA, Inc.*, DKC-15-0442, 2015 WL 5178018, at *7 (D. Md. Sept 3, 2015), despite the "disagreement within the Fourth Circuit as to [whether] dismissal is appropriate, . . . district courts within the Fourth Circuit have continued to find dismissal appropriate." *See, e.g.*, *Willcock*, 2018 WL 3970474, at *5; *Garrett*, 2018 WL 3579856, at *4 ("The FAA requires a district court to stay judicial proceedings involving issues covered by arbitration agreements. Dismissal is also a proper remedy under the circumstances." (citation omitted)); *Bracey v. Lancaster Foods, LLC*, RDB-17-1826, 2018 WL 1570239, at *7 (D. Md. Mar. 30, 2018) ("Having determined that Bracey is bound by the Arbitration claims.") (citing *Choice Hotels*)); *Washington v. Lennar Corp.*, TDC-17-0079, 2018 WL 722418, at *3 (D. Md. Feb. 5, 2018) ("While the FAA further requires only that this Court stay the proceedings pending that arbitration, 'dismissal is prober when all of the issues presented in a lawsuit are arbitrable.'

*Choice Hotels* . . . .  Here, all of Washington's claims against Lennar are within the scope of the parties' arbitration clause.  The Court will thus dismiss Washington's claims.").

Each one of the Complaint's ten counts fall within the scope of the Agreement's arbitration clause.  Accordingly, the Court shall dismiss plaintiff's suit.

### IV.     Conclusion

For the reasons set forth above, I shall grant Wells Fargo's Motion.

An Order follows.

Date: January  17th, 2019                    _____/s/_____

                                             Ellen L. Hollander
                                             United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

MEGHAN STONE

   *Plaintiff*,

   v.

WELLS FARGO BANK, N.A.,

   *Defendant*.

Civil Action No. ELH-18-2526

**ORDER**

For the reasons set forth in the accompanying Memorandum, it is this 17th day of January, 2019, by the United States District Court for the District of Maryland, **ORDERED**:

1) Wells Fargo, N.A.'s Motion to Compel Arbitration and Dismiss Action (ECF 5) is **GRANTED**; and

2) The Clerk is **DIRECTED** to close this case.

_____/s/_____

Ellen L. Hollander

United States District Judge